NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMILIA CARICATO, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 05-CV-4917 (DMC) |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Plaintiff Emilia Caricato's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument. See Fed. R. Civ. P. 78. The record provides substantial evidence supporting the Commissioner's decision that Plaintiff was not disabled. Accordingly, the Commissioner's decision is affirmed.

**I.   BACKGROUND**

  **A.   Procedural History**

Plaintiff filed an application for DIB on April 22, 2003, alleging disability as of October 25, 1995. Tr. 47-49. The application was denied initially as well as on reconsideration. R. 25-25, 28. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to review the application

*de novo*. R. 31. A hearing was held on February 8, 2005 before ALJ Katherine Edgell. On April 27, 2005, a decision was issued, denying the claim. R. 9-17. Appeals Council concluded that there were no grounds for review. R. 4–6. Plaintiff thereafter filed this action challenging the final decision.

### B. Factual History

Plaintiff, Emilia R. Caricato, is a 62 year-old female born on August 1, 1944. R. 47. She has a twelfth grade education. R. 71. From September 3, 1980 to June 7, 1996, she was employed by Kulite Semiconducto Products Inc. as an Order Entry Supervisor. R. 60. Her job duties included entering and editing orders via computer and supervising other personnel in the order department. R. 66. While employed she spent most of her day sitting and was required to carry stacks of orders and files to different offices. R. 66. These files usually weighed less than ten pounds. R. 66. She stated that as a result of continuous muscle pain in the neck, shoulder, arms, and back she was unable to perform her job-related activities consistently or adequately. R. 65. Plaintiff stopped working on October 25, 1995. R. 65.

On August 17, 1995, Plaintiff saw her family doctor, B. Scherl, M.D., and complained of pain in her upper and lower back. R. 178. Dr. Scherl referred Plaintiff to R. Doidge, M.D. Dr. Doidge first treated Plaintiff on September 21, 1995, and on October 26, 1995 diagnosed Plaintiff with fibromyalgia. R. 136.

Dr. Scherl also referred Plaintiff to rheumatologist, R. Marcus, M.D. R. 166. Dr. Marcus noted the likelihood that Plaintiff had cervical spondylosis and mild rotator cuff tendinitis. R. 167. Additionally, Dr. Marcus found that Plaintiff did "not have adequate criteria to make the diagnosis of fibromyalgia, but she may have an incomplete form of this disorder." R. 167. On December 7, 1995, Dr. Marcus observed that Plaintiff was feeling considerably better, sleeping better, had reduced

fatigue, and reduced muscle spasms. R. 165. At that time, Dr. Marcus stated that Plaintiff had essentially full range of motion of the cervical spine and shoulders. R.165.

On January 11, 1996, Dr. Doidge diagnosed Plaintiff with Fibromyalgia and somatic dysfunction of the thoracic spine. R. 140. Dr. Doidge acknowledged that Plaintiff could not currently work, but he entered an estimated recovery date as March 1, 1996. R. 140. Dr. Doidge later extended this estimated recovery date to June 1, 1996. R. 142. After evaluating Plaintiff on March 4, 1996, Dr. Doidge noted a "vast improvement." R. 170. Dr. Doidge reiterated that by June 1, 1996 Plaintiff would be able to return to work. R. 170. However, Dr. Doidge opined that Plaintiff "will most likely not be able to tolerate a computer type position, since this exacerbates her condition." R. 170.

On April 10, 1996, Dr. Scherl commented that while Plaintiff continued to have back and shoulder pain, she was "generally doing well." R. 177. After examining Plaintiff in June of 1996, Dr. Marcus noted increased achiness, insomnia, and fatigue. R. 144, 165. Dr. Marcus also observed that Plaintiff had six tender points which were suggestive of Fibromyalgia. R. 144, 165. Dr. Marcus stated that Plaintiff had no neurologic deficits. R. 144. Dr. Marcus advised Plaintiff to pursue low impact aerobics and walking. R. 165.

On February 1, 2000, Plaintiff was evaluated by Mitchell K. Spinnel, M.D., an associate of Dr. Scherl. R. 169. In his report, Dr. Spinnel briefly discussed Plaintiff's medical history and concluded that Plaintiff was medically disabled with multiple physical limitations. R. 169.

In January 18, 2002, Plaintiff began treating with John Hwang, M.D. R. 145. Dr. Hwang noted a history of Fibromyalgia, mild hypercholesterolemia, and obesity. R. 145. However, Dr. Hwang only diagnosed Plaintiff with Fibromyalgia. R. 146. Dr. Hwang found no physical

deformities, and the laboratory conducted tests were negative. R. 145. Dr. Hwang also conducted a residual functional capacity assessment on May 11, 2003. R. 146-47. Dr. Hwang concluded that Plaintiff could carry up to ten pounds, stand/walk for up to six hours per day, and sit for up to six hours per day. R. 146. There were no restrictions placed on pushing or pulling. R. 146. Dr. Hwang also noted that due to severe pain at times, Plaintiff was limited to mild activity. R. 146.

On June 18, 2003, Burton Gillette, M.D., a State Agency review physician, conducted a residual functional capacity assessment of Plaintiff. R. 149-56. Dr. Gillette found that Plaintiff had the same limitations as concluded by Dr. Hwang. R. 149-56. Dr. Gillette added that Plaintiff could not climb ladders, ropes, and scaffolds and should refrain from crawling. R. 151. In addition, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Social Security Act on October 25, 1995, the date she stated she became unable to work, and continued to meet them through December 31, 2001, but not thereafter.
2. The claimant has not engaged in any substantial gainful activity since October 25, 1995.
3. The claimant's Fibromyalgia, rotator cuff tendonitis, and somatic dysfunction of the cervical and thoracic spine are considered "severe" based on the requirements in the Regulations (20 CFR § 404.1520(c)).
4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
5. The undersigned finds the claimant's allegations regarding her limitations not totally credible for the reasons set forth in the body of the decision.
6. The claimant retains the capacity to perform the physical exertion requirements of work except for work requiring sustained standing or walking or work requiring lifting/carrying more than 10 pounds.
7. The claimant's past relevant work as order entry clerk/supervisor did not require the performance of work-related activities precluded by the above-cited limitations (20 CFR § 404.1565).
8. The claimant's medically determinable impairments did not prevent her from performing her past relevant work during the period October 25, 1995 through December 31, 2001.

4

>   9.   The claimant was not under a "disability," as defined in the Social Security Act, at any time on or before December 31, 2001 (20 CFR § 404.1520(f)).

R. 16-17.

Plaintiff raises the following arguments on appeal: (1) the ALJ did not enumerate Plaintiff's severe impairments; (2) the ALJ failed to engage in the listing analysis for medical equivalence; (3) the ALJ failed to give credence to Plaintiff's subjective complaints; and (4) the ALJ ignored pertinent findings of physicians. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should not be disturbed.

**I.   DISCUSSION**

   **A.   Standard of Review**

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., Williams v. Shalala, 507 U.S. 924 (1993). "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Some types of evidence will not be "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v.

Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001). Thus, substantial evidence may be slightly less than a preponderance. Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of HEW, 567 F.2d 258, 259 (4th Cir. 1977)). "[The reviewing court] need[s] from the ALJ not only an expression of

the evidence []he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001). "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### B. The Five Step Analysis for Determining Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Under the Social Security Act ("Act"), a claimant is eligible for benefits if she meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, and demonstrates that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. For the first two steps, the claimant must

establish (1) that she has not engaged in "substantial gainful activity" since the onset of the alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). Given that the claimant bears the burden of establishing these first two requirements, her failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there. Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies her initial burdens she must provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. Id. If she cannot so demonstrate, the benefit eligibility analysis requires further scrutiny. The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment. 20 C.F.R. § 404.1520(e). If the claimant is found to be capable to return to her previous line of work, then she is not "disabled" and not entitled to disability benefits. Id. Should the claimant be unable to return to her previous work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. Yuckert, 482 U.S. at 146-47 n.5.

    **C.**    **Insured Status**

To qualify for disability insurance benefits, the claimant must establish that she became disabled at a time when she met the insured status requirements for such benefits. See 20 C. F.R.

§§ 404.130 and 404.315. Additionally, evidence of an impairment which reached disabling severity after the expiration of an individual's insured status cannot be the basis for the determination of entitlement to a period of disability and disability insurance benefits. This is true even if the impairment itself may have existed before the individual's insured status expired. See Manzo v. Sullivan, 784 F. Supp. 1152, 1156 (D.N.J. 1991); Kane v. Heckler, 776 F.2d 1131, 1131 n.1 (3d Cir. 1985).

### D. The Record Must Provide Objective Medical Evidence

Under the Act, proof of a disability requires objective, medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Additionally, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires

> medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonable be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment.") Furthermore, S.S.R. 96-7p provides that

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20

C.F.R. § 404.1529(c)(4) and § 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that ALJ failed to consider his subjective symptoms where ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); Williams, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work); Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves constitute disability").

## II.    ANALYSIS

Plaintiff argues that the decision of the Commissioner is unsupported by substantial evidence in the record. Pl. Br. at 4. Plaintiff further contends that substantial evidence exists in the record to support a finding of disability pursuant to 42 U.S.C. 405(g). Id.

At the outset, it is important to note that the relevant time period for Plaintiff's disability is the time at which her insured status expired. As set forth above, Plaintiff may qualify for disability insurance benefits only if she establishes that she became disabled at a time when she met the insured status requirements for such benefits. See 20 C.F.R. §§ 404.130 and 404.315. Plaintiff met the insured status requirements between October 25, 1995, the alleged onset of Plaintiff's disability, and December 31, 2001, the date Plaintiff was last insured. As such, the ALJ evaluated whether

Plaintiff qualified as "disabled" between those dates.

### A. Substantial Evidence in Record

#### 1. Step One: Whether Claimant Has Engaged In Any Substantial Gainful Work Activity

As to the first step, substantial work activity is defined as "work activity that involves doing significant physical or mental activities." 20 CFR § 404.1523(a). Plaintiff testified that she has not had any income since leaving her job at Kulite Semiconducto Products Inc. R. 243-245. Accordingly, there was substantial evidence for the ALJ to find that Plaintiff had not performed any substantial gainful work activity since her alleged onset of disability of October 25, 1995. This finding is not disputed by the parties.

#### 2. Step Two: Whether Impairment is Severe

As to the second step, the ALJ found that Plaintiff's orthopedic impairments qualified as "severe" between October 25, 1995 and December 31, 2001. R. 15. The ALJ based this finding on the fact that the impairments "resulted in more than minimal work-related limitations." R. 15. However, Plaintiff contests this finding, arguing that the ALJ did not properly identify all of Plaintiff's impairments. Specifically, Plaintiff argues that the ALJ should have been more clear as to "[w]hat those orthopedic impairments are and what restrictions they produced." Pl. Br. at 15. Additionally, Plaintiff argues that the ALJ should have evaluated Plaintiff's obesity. Id. at 9.

An impairment is severe if it significantly limits an individual's physical or mental ability to do basic work activities. 20 CFR § 404.1521(a). Discussing numerous medical reports, the ALJ determined that Plaintiff's orthopedic impairments were severe during the relevant time period. R. 14-15. While Plaintiff contends that the ALJ does not describe the nature of the orthopedic impairments, the ALJ specifically found that Plaintiff's "Fibromyalgia, rotator cuff tendonitis, and

11

somatic dysfunction of the cervical and thoracic spine are considered 'severe.'" R. 16.  Additionally, the ALJ noted that notwithstanding these orthopedic impairments, Plaintiff was able to sit for six hours, stand/walk for six hours, and carry up to ten pounds.  R. 15.  Plaintiff's impairments also precluded her from climbing ladders, ropes, or scaffolds.  R. 15.

Plaintiff does not challenge these findings of severe impairment.  Rather, Plaintiff contends that "what those orthopedic impairments are and what restrictions they produced is left to [the] imagination." Pl. Br. 15.  Contrary to Plaintiff's contentions, the ALJ enumerated in her findings which impairments were severe.  Also, in discussing the residual functional capacity assessments performed on Plaintiff, the ALJ made note of the restrictions that are a consequence of Plaintiff's impairments.  Most importantly for this Court's analysis, is that there is substantial evidence in the record to support ALJ's findings and determination.

Secondly, Plaintiff contends that the ALJ erred by not finding that Plaintiff also suffers from obesity.  As evidence that Plaintiff was "diagnosed" with obesity, Plaintiff directs this Court's attention to Dr. Hwang's medical report.  R. 145-47.  Dr. Hwang does mention obesity in Plaintiff's medical history.  R. 145.  However, under the diagnosis section Dr. Hwang only lists Fibromyalgia and does not mention obesity.  R. 146.  This does not suffice to corroborate Plaintiff's assertion that she was "diagnosed" with obesity.  Even if Plaintiff was diagnosed with obesity, there is no medical evidence that such obesity was severe.  The aforementioned limitations were based on Plaintiff's orthopedic impairments, not obesity.  Dr. Hwang found no physical abnormalities and the laboratory studies were negative.  This is important, as "a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings." 20 CFR § 404.1508.

Accordingly, the ALJ's findings regarding step two are upheld.

12

### 3. Step Three: Whether Impairment is Listed in Appendix 1, or Equal to Listed Impairment

Even though the ALJ found that Plaintiff's impairments were severe, the ALJ held that they "did not meet the requirements of any impairments listed in Appendix 1, Subpart P, Regulation No. 4." R. 15. Plaintiff argues that the failure to explore whether the claimant's disability falls within one of the per se categories listed in Appendix I ("the listing") is an inadequate discharge of the ALJ's duty to develop the record and mandates remand. Pl. Br. at 22. In support of her position, Plaintiff primarily relies on Burnett, 220 F.3d 112. In Burnett, the court remanded on ALJ's conclusory step three analysis. Id. at 126. The court found that such limited analysis is not susceptible to meaningful judicial review. Id. at 120.

However, "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting [her] analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Rather, the ALJ's decision must be read as a whole to determine whether the ALJ considered the appropriate factors in determining whether a severe impairment falls within the listing. Id. An ALJ's decision is not deficient "because it does not indicate which listed impairments were considered and rejected." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 959 (3d Cir. 2006).

In her decision, the ALJ conducted a thorough analysis of Plaintiff's claimed aliments. At this step, the ALJ is not obliged to conduct a comparative analysis of each impairment enumerated in the listing. Instead, Plaintiff bears the burden of demonstrating that a severe impairment satisfies the criteria of a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Furthermore, there must be sufficient medical evidence in the record to warrant a finding that a severe impairment medically equals an impairment in the listing. See 20 C.F.R. § 404.1526. This medical evidence "must meet all of the specified medical criteria . . . An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 531 (emphasis in the

original).

Plaintiff claims that Fibromyalgia is a connective tissue disorder, and thus should be analyzed under Paragraph 14.06 of the listing. "The documentation needed to establish the existence of a connective tissue disorder is medical history, physical examination, selected laboratory studies, appropriate medically acceptable imaging, and, in some instances, tissue biopsy." 20 C.F. R. Part 404, Subpart P, Appendix 1, § 14.00B. This requisite documentation is entirely absent from the record. Dr. Marcus noted that no laboratory tests were obtained during his treatment of Plaintiff. R. 144. Dr. Hwang performed laboratory tests which came back negative. R. 145. The ALJ acknowledged this in her opinion. R. 15. Based on the lack of medical evidence, there was substantial evidence for the ALJ to determine that Plaintiff's Fibromyalgia was not medically equal to a connective tissue disorder as enumerated in Paragraph 14.06 of the listing.

Plaintiff further contends that rotator-cuff tendinitis should be evaluated under Paragraphs 1.03 and 11.17. Paragraph 1.03 of the orthopedic listing covers, "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b." 404, Subpart P, Appendix 1, § 1.03. 1.00B2b defines "ineffective ambulation" as "having insufficient lower extremity functioning. . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 404, Subpart P, Appendix 1, § 1.00B2b. As examples, the listings cite that in order to ambulate effectively a claimant "must have the ability to travel without companion assistance," and "individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering." Id. The record demonstrates that Plaintiff was able to ambulate effectively under the listing. In a daily living questionnaire Plaintiff stated she visits relatives and friends and travels to church. R. 105. Doctors Hwang and Gillette conducted a residual functional capacity assessment of Plaintiff. Both doctors found that Plaintiff suffered no limitations in her ability to push or pull.

14

R. 146, 150. Dr. Marcus even advised Plaintiff to pursue low impact aerobics and walking. R. 165. Again, these findings were recited in the decision. R. 14, 16. There is substantial evidence for concluding that Plaintiff's impairments do not medically equal the impairments contained in Paragraph 1.03 of the orthopedic listing.

Paragraph 11.17 of the neurological listings applies to "[d]egenerative disease not listed elsewhere... with... [d]isorganization of motor function." 404, Subpart P, Appendix 1, § 11.17. In order for Plaintiff's rotator-cuff tendinitis to medically equal the neurological impairments contained in the listing, Plaintiff would have to demonstrate "[p]ersistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements." 404, Subpart P, Appendix 1, § 11.00C. This should be determined based "on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." Id. The two residual functional capacity assessments disclose that Plaintiff was not so limited, and this was acknowledged by the ALJ in her decision. Moreover, Dr. Marcus determined that Plaintiff had no neurologic deficits. R. 144.

Lastly, Plaintiff contends that somatic dysfunction of the cervical and thoracic spine should be evaluated under Paragraph 1.04 or 12.07. Paragraph 1.04 of the listings discusses disorders of the spine, which require:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

404, Subpart P, Appendix 1, § 1.04A. The residual functional capacity assessments support the ALJ's finding that Plaintiff's impairments do not medically equal a disorder of the spine as defined by the listing. Paragraph 12.07 applies to mental disorders. There is no medical evidence in the

15

record to conclude that Plaintiff is suffering from a mental disorder.

Here, the ALJ made sufficient findings that permit this Court to conduct a meaningful judicial review so there is no need to remand for further development as Plaintiff requests. The ALJ articulated her findings to support her conclusion that Plaintiff did not satisfy step three. Accordingly, the ALJ's decision on step three is upheld.

       4.  <u>Step Four: Residual Functional Capacity to Perform Past Relevant Work</u>

The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment. 20 C.F.R. § 202.1520(e). If the claimant is found to be capable to return to her previous line of work, then she is not "disabled" and not entitled to disability benefits. Id. A comparison between the claimant's residual functional capacity and the requirements of her past work is necessary to satisfy step four. 20 C.F.R. § 202.1520(e)-(f). Residual functional capacity is defined as what the claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). Past relevant work is defined as the skills and abilities that the claimant has acquired during work performed within the 15 years prior to the onset of disability. 20 C.F.R. § 404.1565(a).

Here, two doctors performed a residual functional capacity assessment on Plaintiff. Dr. Hwang found that Plaintiff could carry up to ten pounds, stand/walk for up to six hours per day, and sit for up to six hours per day. R. 145-47. Dr. Hwang also found no limitations on Plaintiff's ability to push, pull, or handle objects. Subsequently, Dr. Gillette, a state agency review physician, conducted a similar assessment of Plaintiff. R. 149-56. Dr. Gillette's findings echoed those of Dr. Hwang. Additionally, the ALJ took note of the non-work activities of which the Plaintiff currently

engages. Plaintiff "does some light cooking, limited cleaning, reads, watches television, visits friends, and relatives, and goes to church on Sundays." R. 16. These corresponding medical reports plainly provide the ALJ with substantial evidence for determining the limitations of Plaintiff's impairments. Again, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401.

After determining Plaintiff's residual functional capacity, the ALJ must determine whether Plaintiff's impairments forestall her from performing the requirements of her past relevant work. 20 C.F.R. § 404.1520(e). Plaintiff's past relevant work includes being employed by Kulite Semiconductor Products. Plaintiff began work in September of 1980 as an order entry clerk and was eventually promoted to manager of the order entry department. In her work history report, Plaintiff described the nature of her job. R. 108-15. Plaintiff's job duties required her to sit for six hours per day, stand for two hours per day, and walk for one hour per day. Plaintiff also carried stacks of orders and files between offices, but these stacks and files never weighed more than ten pounds.

Comparing Plaintiff's residual functional capacity assessments with the requirements of her past work, the ALJ concluded that "this job did not require more than sedentary exertion and the claimant retained the capacity to perform it on and before December 31, 2001." R. 16. Substantial evidence exists to support this conclusion. The Plaintiff's prior work experience does not require her to sit, stand, or lift beyond the limitations of her impairments. Accordingly, the ALJ's decision under step four is upheld, and Plaintiff is not entitled to benefits.

     5.    Evaluation of Symptomatology

Plaintiff claims that the ALJ failed to give credence to Plaintiff's subjective complaints.

17

Contrary to this contention, the ALJ's decision comports with the weight of the medical evidence. Pursuant to 20 C.F.R. § 404.1529(c), when a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists. Further, if a plaintiff's symptoms suggest a greater restriction than can be demonstrated by objective evidence alone, the ALJ shall give consideration to other factors, including subjective complaints. 20 C.F.R. § 404.1529(c)(3). However, it is well within the discretion of the ALJ to evaluate a claimant's subjective complaint. Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995) aff'd, 85 F.3d 611 (3d Cir. 1996) (citing LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988)). "Even in situations where a subjective complaint of pain coincides with a known impairment, it is within the discretion of an ALJ to discount that claim if there is a rational basis to do so." Id. (quoting Duncan v. Sullivan, 786 F. Supp. 466, 470 (E.D. Pa. 1992).

Here, the ALJ determined that the objective evidence of the record did not substantiate Plaintiff's claims to the extent alleged. Because a plaintiff must put forth more than just subjective complaints of pain, the ALJ did not err by giving Plaintiff's subjective complaints little weight. At her hearing, the Plaintiff testified that she can only walk one block, R. 264, has difficulty sitting for a full hour of television, R. 272, and that she can carry no more than a gallon of milk, R. 272. However, these subjective complaints are, at least partially, at odds with the results from the residual functional capacity assessments performed by Doctors Hwang and Gillette. Both doctors found that Plaintiff could sit for up to six hours per day, stand/walk for up to six hours per day, and carry up to ten pounds. R. 146, 150. Additionally, as the Commission correctly points out, Plaintiff's ability to perform some light cooking, cleaning, watch television, and visit friends "are all consistent with the ability to do sedentary work." Def. Br. 13. The ALJ further noted that the Plaintiff enjoys other

18

sedentary activities such as word puzzles. The ALJ also considered the fact that there have been no signs of muscle atrophy or neurological deficits, and there is also no indication of hospitalization. As such, the Court finds that there was a rational basis for the ALJ to discount Plaintiff's subjective complaints.

      6.   Findings of Treating, Examining, and Reviewing Physicians

  Plaintiff argues that the ALJ ignored pertinent findings of the treating, examining, and reviewing physicians. While there are several statements from doctors in the record finding that Plaintiff is unable to work, these statements are not the product of the five-step social security evaluative framework. "20 C.F.R. § 404.1527 indicates that '[a] statement by your physician that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are 'disabled.'" Wright v. Sullivan, 900 F.2d 675, 683 (3rd Cir. 1990) (quoting Newhouse v. Heckler, 753 F.2d 283, 286 (3rd Cir. 1985)). The ALJ is not obliged to accept conclusory statements that the Plaintiff is "medically disabled." In fact, the ALJ considered Dr. Hwang's January 28, 2005 letter. This one paragraph letter stated that Plaintiff cannot sustain employment because any physical activity exacerbates her pain. R. 168. The ALJ considered this statement but decided not to afford it great weight as it was made more than three years after the expiration of Plaintiff's insured status. The ALJ evaluated the evidence and offered a reason why she rejected it. This does not constitute grounds for reversal of the ALJ's determination.

  Plaintiff additionally contends that sedentary work requires the ability to lift ten pounds, and that Dr. Gillette found that Plaintiff cannot lift ten pounds. Pl. Br. 35, 38. This is factually incorrect.

19

In her daily living questionnaire, Plaintiffs states that ten pounds was the *heaviest* weight her job required her to lift, and that she was frequently required to lift less than ten pounds. R. 66. Dr. Gillette found that Plaintiff can occasionally and frequently lift ten pounds. R. 150. Dr. Gillette's findings are not in conflict with the ALJ's conclusion that Plaintiff can perform sedentary work. Rather, the findings of Dr. Gillette support the ALJ's finding. Accordingly, there is substantial evidence for the ALJ's determination that Plaintiff is not disabled.

**3.    CONCLUSION**

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's factual findings and thus affirms the Commissioner's final decision denying benefits for Plaintiff.


        S/ Dennis M. Cavanaugh
        Dennis M. Cavanaugh, U.S.D.J.

Date:       February __13, 2007
Orig.:      Clerk
cc:         Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File